We will hear argument next in Case 21-5726, Kemp v. United States. Mr. Adler. Mr. Chief Justice, and may it please the Court, Rule 60b-6 governs this case because Rule 60b-1 does not. That is so for two independent reasons. First, Rule 60b-1 does not cover legal errors. Second, it does not cover judicial errors. It does not cover legal errors because the word mistake means mistake of fact. B-1 copied 17 state laws, and they overwhelmingly excluded legal errors. That makes perfect sense in this context. The three words accompanying mistake are all terms of art describing factual mishaps. 60a uses the word mistake to mean mistake of fact. And 60b-1 through 3 have a one-year deadline precisely because they are factual defects. Meanwhile, b-4 through 6 do not have such a deadline, and we already know that they cover legal errors. If b-1 covered legal errors as well, that would contravene the structure of the rule. B-1 does not cover judicial errors either. Those errors should be corrected under Rule 59e or on appeal, which have strict deadlines. Where a party fails to do so, they should pay the price by having to show extraordinary circumstances under b-6. B-1, however, requires no heightened showing at all. So if b-1 covered judicial errors, people could use b-1 to get around the deadlines, and that regime is not sound. Neither is the government's definition of mistake. Originally, the government said that mistake meant any and all errors. Now they say that mistake means only unintentional and obvious errors. Slicing and dicing errors in that manner is unsupported and unworkable. No circuit has adopted that approach, and this Court should not impose an untested subjective standard on lower courts and litigants. I welcome the Court's questions. Mr. Adler, are you conceding that the plain meaning of the word mistake doesn't work for you? Justice Thomas, it depends what you mean by the plain meaning of the word mistake. If you mean any — No, the judge made a mistake here. Sure, Your Honor, but it can't mean that in this context, and I'd like to give three reasons why, based on the text, structure, and precedent. Starting with precedent, this Court has about a handful of cases analyzing legal errors under b-6. If b-1 included all legal errors, that would conflict with the b-6 precedents, because those two subdivisions are mutually exclusive. Relatedly, as to the structure, if b-4 through 6 already cover legal errors, and so that would mean that any errors under those subdivisions would simultaneously be covered under b-1, that would create substantial redundancy within the rule. And thirdly, as for — it would create troubling implications for Rule 60A. If mistake meant any and all legal errors, then that would mean legal errors arising from oversight or omission would be covered by 60A, and that would eviscerate finality because 60A has no deadline at all, and judges could come in decades later and start correcting legal errors. They can do it sui sponte and without notice to the party. So it cannot mean any and all errors. That is why the government has expressly disavowed that position on page 15 of its brief in this case. The problem is the government's position is no better. They have some of the exact same problems here, but you've added on top of it major workability problems as well, with this unintentional and obvious limitation. Those words are just entirely subjective, and how is a litigant supposed to know whether the judge's error was intentional or not? Is the government suggesting we put them on the stand? That would be a fraught enterprise, and as for obvious, that also is inherently subjective. What's obvious to the litigant may not be obvious to the judge, and people need to know what subdivision applies on the front end, because we have to know if there's a one-year deadline or if they have to make a heightened showing like extraordinary circumstances. And so our position is really the only viable position here, and our position reads the rules as a coherent whole. It respects precedent, and it's entirely workable. If you take B1 off the table for legal errors, then there's just no question where they go. They all go in B6. But you have the difficulty of distinguishing between fact and law, and then you also have the difficulty in identifying whose error was it. I mean, I think the government makes a good point that it can be difficult to figure out if a legal error was by the litigant or by the court. Here, you could say, well, the lawyer failed to point out that the cert deadline ran differently when his co-defendants had sought cert. Lawyer made a mistake, and then the judge didn't catch it and find that authority on his own. So is it really as clear as you say? And plus, I'll just throw out for good measure, too, that when you point out that the other provisions in 6DB are also referencing legal errors, and so there would be a lack of clarity about where they fell, the specific control is the general, right? And those are all specific kinds of errors, you know, void, et cetera. So could you address that? Sure. So I guess I'll start with the second part of that first. The only other rules that we know, putting aside B-1, that cover legal errors are B-4 for void judgments and B-5. Those are pretty narrow categories, and they're also mutually exclusive with B-6. So if they don't fall in B-4 and B-5, we know they go in B-6. If you open up B-1, then we're going to have a lot of confusion about where they go. As for the first part of your question, the fact-law distinction is a very familiar distinction that courts around the country apply every day. We do it in standards of review, and we do this specific mistake-of-law, mistake-of-fact distinction all the time across various areas of the law. And most importantly, it's an objective distinction. We don't have to get into somebody's mind to know whether it's obvious or intentional or not. So while I grant you that there may be some hard cases on the margins about fact-law as a whole, it's going to be much easier and much more workable than the government standard. We apply clear-error standards in courts every day, too. For findings of fact, correct. And so that's what I mean when appellate courts... Well, for forfeited, in cases of forfeiture, too, right? So plain error, plain error, sure. So that analogy I don't think quite holds up here, because that's an appellate court doing it after the fact and looking at the state of the law at the time in the record. And here, we really should be looking at this from the perspective of the litigant, because it's the litigant that has to know what subdivision to file the motion under. And so it's going to we need an objective distinction here. Fact-law is an easy one. As for the facts of this case, I mean, I think, if anything, they show the problems with the government's position here, because the error in this case was overlooked by the government and the district court twice, including after Mr. Kemp brought it to their attention in the 60B motion. And yet the government is here saying that this was an obvious and unintentional error. Well, if that's true, I'm not really sure what wouldn't be. So I grant you that there may be some hard cases, fact-law wise, but they're just going to pale in comparison to the problems that we're going to see with the government's position. Well, the government's position is not the same, as you know, as the judge-friendly position, which is, to Justice Thomas's question, more the ordinary meaning of mistake. Mistake can mean a mistake of law. Professor Moore, judge-friendly. It's been applied in the Second Circuit and a bunch of other circuits. It seems workable enough there. They put in the deadline for filing it. Why not just why is that not a simple route? It's not the government's position, as I understand it. But why is that not a simple? So, you know, I don't want to say anything disparaging about judge-friendly, but I think that opinion was wrong. And it didn't conduct a textual analysis. It didn't conduct a structural analysis of the rule. It was part of a line of 1960s opinions by the courts of appeals that basically said, well, we need a mechanism for district courts to correct their own errors. But what they overlooked was that 59E provides that exact mechanism. Right. There's definitely overlap there, and I grant you that. But it's been the way it's been interpreted, and there's going to be redundancies here. A lot of our usual canons are not going to be able to solve all the problems that are going to be created, no matter which interpretation we adopt. But it's been workable in the Second Circuit and several other circuits for a long time. And it's not surprising that Judge Friendly may not be very familiar with mistakes of law. Very well, Your Honor. I can think of at least three decisions we've written. One in the Patton case, which was pretty interesting, and Justice Kagan wrote a decision. I wrote it. Why do we have to keep writing these decisions if it's so clear? Maybe we just make it worse, but the decision between fact and law. It seems to me they're always coming up, and it's actually not so easy. Sometimes it is. And then the argument the other way would be we're going to have that problem. And, you know, I'm sitting there as a trial judge, and I actually got confused between shifting and springing uses. And at the end of the case, I think, oh, my God, I should have said shifting use. It was not a shifting use. It was a springing use. Oh, my goodness. And I can't say it's major, but I'd like to correct it right now. All right? Matter of law. So what they're saying, look, the judges do make mistakes. Give them a quick chance to do it, even if it's one of law. Call it to their attention. Six of one, half a dozen of the other, because we have problems both ways. Justice Breyer, judges have that authority under Rule 59E. That's what Rule 59E is for. They might not know it until actually three months later, because they do not read every night the shifting, springing use section of the American law of property. Well, and let me just add one thing to Justice Breyer's hypothetical. Let's say that the shifting, springing thing comes to light after the Rule 59 deadline has passed. What's the extraordinary circumstance that justifies fixing it? I mean, maybe just a regular old error, and we'd like to fix it without having to show a heightened standard. Well, I really think the onus is going to be on the parties there to file the motion under 59E or to file an appeal. That's how legal errors get corrected in our system. And our position respects those primary mechanisms for doing that and their deadlines. If you miss those deadlines, if you miss the 59E deadline, if you miss the appeal deadline, then you've got to show extraordinary circumstances. Otherwise, those deadlines really don't mean anything. I don't want to interrupt. Do you have more? Sure, Your Honor. Well, it doesn't solve the 59E problem. I agree. Total overlap. Is there a problem from that? I mean, this is a Rules Committee question more than a judicial question, but I'll just ask you, is there a real-world problem from the Second Circuit's approach with the overlap plus the time limit on filing the 60B1? So I just think it doesn't make sense of the rules as a whole, because, first of all, now that the 59E deadline is 28 days and most appeals the deadline is 30 days, it's not really accomplishing anything. It's a weird two-day. Yeah, it's not doing anything. So the other thing is that, you know, it just doesn't make sense to have a non-extendable 28-day deadline for 59E. If you can just come in on day 29 using another rule to do the exact same thing, that's just not a coherent system, that's not reading the rules in harmony. Counsel, the rules are in harmony, because it's not that you have a year to bring a 60B1 motion. You have to bring it within a reasonable time, up to one year. And so if you could have brought it under 59E, a court is going to ask, or on a direct appeal, a court is going to ask, bringing it after that time pass, is there a reason for that? If there's not a reason for that, here the reason would be my attorney, the government, the court, we're all incompetent, and I'm the only one who did it and I'm pro se and didn't have time. I believe most judges would say, you're right, I made a mistake and grant it to you. But I want to go to the more important question. The circuits are all over the place. Only the 5th and 10th go the government's way with an obvious legal error. As Justice Kavanaugh pointed out, the 2nd, 6th, 7th, and 11th call it any legal error. I'm really not sure what the difference means or why. What I am concerned about is those circuits that permit 60B6 motions when there's been a change in law or an intervening change in the law that renders the initial judgment based on overruled or changed laws. We've even done it in Buck under 60B6. How do we write this opinion to avoid barring that, meaning do we have to write it the 2nd, 6th, 7th, and 11th way or the 5th and 10th way, but how do we avoid opining on that inadvertently? Because it can't be all legal errors the way the government suggests that are obvious or not obvious. So how do we write this? I know we're asking you to rule against yourself, but I think it's important to ‑‑ Well, that's what I was going to say. I was going to say that I think that's a question for the government because the whole reason they've come up, I think, with this unintentional and obvious definition is to get around as many of this Court's B6 precedents as they can which concern subsequent changes in the law. There's at least four. But that's logical, isn't it? You can't anticipate subsequent changes in law, and that's what 60B6 is about. So I'm asking you, yes, I'm asking you to take a position contrary to your interests, but to say something that makes sense. So how do we write it? I think the only way to write it is based on the government's definition of unintentional and obvious is what mistake means, and I don't see how the Court can write that opinion without throwing the lower courts and litigants into complete chaos. While the 5th and 10th circuits have written this ‑‑ have this obvious limitation, no circuit has this unintentional, intentional limitation, and that's the really big problem here. And in addition to the administrability problems, it's contrary to this Court's decision in Liljeburg which was a classic unintentional oversight, yet this Court analyzed it under B6, and it would also render language in 60A superfluous. If mistake by definition included unintentional oversights, then the oversight or omission language in 60A would be unnecessary. So I think that's the only way to write the opinion, to preserve those other 60B cases, but I don't think it's a viable option for the Court here. I share Justice Sotomayor's concern about the 60B6 being preserved for subsequent changes, but in the 2nd Circuit, presumably, but correct me if I'm wrong, in those other circuits that follow the 2nd Circuit's rule, presumably 60B1 is available for mistakes of law, but 60B6 is still available for intervening changes in the law that come after that deadline, but correct me if I'm wrong about that. I believe that is correct, Your Honor, but those 60B6 cases, they're going to have to show extraordinary circumstances. Well, a change in the law often ‑‑ well, tell me what you think extraordinary circumstance means in relation to changes in the law. You know, you're a district court judge and a circuit decision comes out two months later. What do you say to that? So in this Court's decision in Gonzales, I think the Court was pretty clear that a subsequent change in the law by itself is not going to be an extraordinary circumstance, because that's just going to disrupt finality too much. So you've got to show something else along with that. And so I think this Court's decision in Buck v. Davis is a good example of that. It was a subsequent change in law and procedural default coupled with, you know, very unusual and troubling circumstances about the use of race in a capital sentencing. And so I think, you know, that's how we deal with subsequent changes to the law. Now, in this situation, we have a legal error that existed at the time of the judgment, and the question there under extraordinary circumstances is going to be, why didn't you appeal this? Why didn't you correct this on appeal? And that's the question that this Court asked in Ackerman and in Liljeburg. And in Ackerman, the Court said, well, you can't show extraordinary circumstances because you made a cost‑benefit decision not to appeal this. And in Liljeburg, the Court said, oh, well, we're going to grant ‑‑ we think B‑6 relief is appropriate there because there was no way for you to know about the legal error in time to appeal. And that's exactly the situation here. Mr. Kemp, through no fault of his own, could not have ascertained the basis of the legal error in the district court's judgment in time to appeal it. And the reason why is that he was transferred from federal prison to Miami-Dade County Jail in pretrial detention, and he was not allowed to bring his legal materials, and he was not allowed to conduct any legal research there. He had no access to this Court's rules, and so he could not have just opened to Rule 13.3 and discovered the legal error in the district court's ruling. And this is precisely why we have B‑6, to serve as a catchall in cases to remedy gross injustice. That's why we have it. It's not going to come up very often, but we need to preserve it. And if you expand B‑1, what you're going to do is contract B‑6, because they're mutually exclusive provisions. And I think the Court needs to be very careful before it does something like that. You can proceed with your argument. Thank you, Your Honor. I'm trying to think about where to go from here. So I guess one thing we haven't talked about is the judicial errors. So we have a second theory in this case, which is that even if legal errors are not covered by B‑1, judicial errors are not either. And the government places the entire weight of its argument on the removal of a pronoun in 1946. And basically what the government is saying is that when the committee removed a pronoun, it transformed 60B‑1 into essentially a substitute for an appeal. And I just don't think that is a plausible take on the history here. But why do you think they did it? To capture mistakes by third parties, like process servers, notaries, postal workers. And that's why they did it. And we know that from several sources, not just this Court's precedent in Liljeburg, but also the official explanation in the Advisory Committee note, which explains that they did it to capture mistakes that warranted the supervisory jurisdiction of the courts. And courts don't exercise supervisory jurisdiction over their own mistakes, but rather the mistakes of others. But the statute ‑‑ sorry, the rule doesn't ‑‑ nothing on the face of the rule excludes courts. And what about the point I made before, which was a repetition of the government's point, that it can be difficult to figure out whose error it was? It could be categorized as the council's error, it could be categorized as the court's error. So, Your Honor, I don't think that's a difficult distinction when we're talking about legal errors, because the district court has an independent obligation to ascertain and apply the law in every case, regardless of what the parties say. And so when there's a legal error, the only question is, well, did the district court commit an error? It doesn't matter what the parties say. As for the text, we rely on the NOSATAR Associates canon for this. The accompanying words all involve things that judges don't do or they don't commit. Surprise, excusable neglect, those aren't judicial actions here. And then, of course, we have our structural argument about respecting the deadlines for 59E and appeal. And so, you know, if B-1 did the exact same thing and covered legal errors, then that regime just doesn't work. It doesn't make sense. And there's not going to be any repose in the system when someone fails to appeal. If someone doesn't appeal, then, you know, typically we should require extraordinary circumstances in order to reopen a final judgment. People need to be able to rely on that judgment. But on the government's view, there's not going to be any repose for an entire year. So because all you have to do is come in on a reasonable time and show a legal error, and you can reopen the judgment. I just don't think that is consistent with our conception of finality and repose that we typically think of in litigation. Thank you, Counsel. Justice Thomas, anything further? No? Ms. Barrett? Thank you very much. Mr. Snyder? Mr. Chief Justice, and may it please the Court. Rule 60B-1 gives courts discretion to grant relief based on mistakes. In ordinary usage, that word sometimes refers indiscriminately to all errors. Other times, the word is used in a narrower sense that covers only inadvertent errors. But under either of those definitions, the district court's error here clearly qualifies as a mistake that the court could have addressed through a timely Rule 60B-1 motion. In arguing otherwise, my friend proposes two limitations on Rule 60B-1. He says that it excludes all legal mistakes and all mistakes by judges. There is no possible way to reconcile either of those limitations with the ordinary meaning of mistake, and my friend does not even try. Instead, he stakes his case on the idea that the drafters of Rule 60B understood mistake as a term of art that carried his proposed limitations. But that argument is dead wrong. All agree that Rule 60B was based on Section 473 of the California Code of Civil Procedure, and it was well settled that Section 473 covered mistakes of law as well as mistakes of fact, as Professor Moore explained in his treatise just a year after helping to draft the first version of the federal rules. My friend dismisses that understanding as limited to default judgment cases, but nothing in Section 473 distinguished between default cases and other cases, and the California Supreme Court squarely recognized that Section 473 covered mistakes of law made outside the default judgment context. As to the distinction between mistakes by parties and mistakes by courts, it's true that the original version of Rule 60B covered only mistakes by the movement himself. But in 1946, the rule was amended to remove any textual limitation on whose mistakes could provide a basis for relief. My friend speculates that the advisory committee still silently intended to exclude judicial mistakes, but that speculation has no grounding in the text of the rule. If the committee had wanted to exclude judicial mistakes as a basis for relief from judicial orders, it would surely have said so expressly. I welcome the Court's questions. Mr. Schneider, you argue in your brief, I think, that not every error is a mistake. I don't know what the difference is. I don't know why an error is not a mistake. So, Justice Thomas, there are two categories of dictionary definitions of the word mistake. Some categories do include all errors. And if forced, we would choose that interpretation over Petitioner's interpretation. But there's another understanding of error that dictionaries define in a way that focuses on inadvertent or unintentional errors. And we think that context suggests that mistake is used in that latter sense here. Most specifically, the words surrounding mistake in 6GB1 all carry a connotation of inadvertence. And so we think it makes sense to read mistake in that inadvertence-focused way as well. Now, my friend has said that that would provide a subjective standard that would be incredibly difficult to administer. I think the key thing to remember in thinking through how you would administer that test is that it's the district courts themselves that are applying Rule 60B in the first instance. And no one is better positioned than the district court to say whether the error in the decision that he or she just entered was just an oversight, just something that they completely missed, like the error here, or instead was something that they thought through and just resolved in a way differently than the one the movement would have preferred. Why would we do that? It just seems like asking for a whole lot of litigation about the difference between an obvious mistake. Suppose you interpret the statute one way and then you read some more in response to the 60B motion. You say, you know, I think I got it wrong. Does that qualify as a mistake or not? So if in your first judgment you thought through it, you thought through the issue and just resolved it a particular way, you later have second thoughts, that is something you could address in 5090, but we don't think that that comes within 60B1. But if you just missed the relevant subsection of the statute the first time you read it or it wasn't cited to you and you didn't see it yourself, that would qualify? That's right, Your Honor. We think that makes sense in light of the role that 60B1 plays in this broader scheme. There are other ways that you can raise errors where you just disagree with the decision maker. Why is this inquiry worth it? I guess as opposed to the Second Circuit and other circuit approach, I just don't understand this collateral inquiry into it wasn't inadvertent, it was, you know, why not just say mistakes are mistakes, as Justice Thomas indicated, and what problems are created? You changed your position from the BIO, well, shifted a little bit your position from the BIO to the brief here. Why? So I don't think we understood ourselves to be changing our position at all. If you look at page 12 of our op, which is where my friend focuses, our argument was just that the error here is a mistake under any conceivable understanding of that word. And we think that is correct. We didn't say in the op that every possible error would be covered. Okay, but on the broader question, why is it worth doing this rather than just the Second Circuit approach? What problems would be created? So I don't want to suggest that we think there's some huge problem with what you're calling the Second Circuit approach, the approach of treating all legal errors as mistakes. The primary reason that we have argued for an interpretation that focuses only on inadvertent mistakes is that we think that makes the most sense in light of the surrounding words in B1. There's also, to some extent, the concern that Justice Sotomayor was identifying about instances in which a decision is correct as a matter of law when it's entered and then some subsequent decision comes along from a higher court and results in a change in the law that we don't think is appropriate in that circumstance to say that the original decision was a mistake. The district court did exactly what it was supposed to. Justice Sotomayor, you were asking about how to address that. Our distinction between inadvertent mistakes and all other mistakes would address that. The other way to do it, if you were going to go with a broader understanding of mistake that Justice Kavanaugh has asked about, would be to say that the focus of that inquiry is on whether it was a mistake at the time the decision was made. And so this court has said time and again that when there is binding precedent of a higher court, the lower courts are required to apply that precedent unless and until it's overturned. So a district court that enters a decision that is correct on the day it's entered has not made a mistake in the sense that we think is relevant here. That would be better addressed under B-6. Breyer. But look, there are four circuits. It's the same question. But from what we can tell, my law clerks look this up, the second, sixth, seventh, and eleventh say that basically 60B-1 authorizes relief based on a legal mistake as long as the time to appeal hasn't run. And then my memo says that, looking at this, that the Fifth, Ninth, Tenth, and D.C. circuits have said that some of the legal errors fall under 6B-1. Fundamental misconceptions are obvious error of law, and you seem to be leaning in the second direction. And so you're saying it doesn't matter. You win regardless. But it seems as if there is a difference of opinion among the circuits, and part of our job is to try to create a harmony. And that's why I have the same question here. You're very, you want to do this? Why? I mean, just say, yeah, you have extra time if you think you convince this judge. You know, you appeal, hey? You know, at least you have three judges who haven't considered this yet. You want to do that, or you want to make this judge try to change his mind? Well, good luck. But if you want to, go ahead. So we think that part of the concern about the broader reading of 6B-1, and I don't want to overstate this concern, but part of the concern is that 6B-1 should not be treated as just a second round of re-litigation, so that the district court rules against you, you file a 59E motion. The district court rules against you again, you file a Rule 60B-1 motion. We don't think that's the way that ---- Well, there may be any lawyers who will do that in the absence of inadvertence, et cetera. But if they want to do it, I mean, a judge is twice decided against them, and now he's going to try to get him to change or her to change his mind? So we don't think that the drafters would have structured this in a way that incentivized that. That sort of filing is just going to slow the process down. If the judge has really resolved the question in a way that you just disagree with, then the correct course is onward and upward. Seek review from a new group of three judges, but don't force everyone to sort of go back through the same exercise. Isn't the time limit designed to deal with that, that some courts have put in on filing 6B-1 motions, interpreting what a reasonable time is? I thought that accomplished your concern or satisfied your concern. So it does in significant part address that concern. A party could still file a 6B-1 motion in the circumstances I've described while also filing a notice of appeal, and those things could proceed on separate tracks. So we think that reading 6B-1 in that broader way might create some unnecessary procedural messiness. We understand 6B-1 as existing. Has that happened often in the Second and other circuits? I can't point to any significant disruption here. I mean, we noted at the certiorari stage that there has never been a petition, as far as we can tell, about this issue before. We do not think that the modest disagreement between the courts of appeals on whether it's all errors or only obvious errors that are correctable under this particular provision is really a significant issue. So I don't want to claim that there has been a problem. But it's here now, and as you're thinking about how best to resolve it, we think that 6B-1 serves the function of allowing district courts to address the kind of mistakes that they would want to address. A mistake like this one, where the district court just never sort of grappled with the fact that there is this exception in Rule 13.3 that deals with situations where a petition for rehearing has been filed by one of the co-defendants. So could you describe a little bit more? I mean, if we're supposed to be giving guidance to courts, what is the category of mistakes? You know, assuming we go the narrower route that you suggested, how do we describe the compartment that's appropriate to think of in this rule? So we would describe that test as whether the issue is one that the district court just overlooked in entering its original judgment, or if instead it's an issue that the district court considered and just resolved in a way that the movement disagrees with. And that test will then be evaluated under an abuse of discretion standard because relief under 60B is discretionary. If a litigant has doubt about whether the district court really grappled with the issue and thinks, maybe the district court just missed this, or maybe the district court just disagreed with me, file a notice of appeal. If you want to file a 60B1 motion and the district court can sort of resolve it by just looking at it and saying, no, I really meant it, you can. But we think that that sort of preserves litigants' rights while still allowing for district courts to deal with oversights in an expeditious fashion. This is the part of Judge Friendly's opinion that we especially like. In that case, there was what he viewed as a mistake that occurred because of a subsequent decision 11 days after the original judgment has been entered. And so on the majority interpretation in which Rule 60B1 extends to mistakes of law by judges, the district court could say, it is now clear on day 11 that this judgment I entered 11 days ago is going to be reversed on appeal. And rather than requiring the parties to file notices of appeal and brief the issue and have the court of appeals get up to speed on what this case is about and send it back and we've got all this delay, I can just enter the decision today under 60B1. And we think the rule serves a valuable function in that context. We're not here to say that it serves some huge function or that it replaces appeal, but we think it's valuable in that function. Justice Kavanaugh, you were asking about sort of the two-day interval. We agree that the rule has less utility after the 2009 amendment to 59E that extended the deadline from 10 days to 28 days. Of course, at the time that 60B1 was adopted in 1946, there was a larger window. And even today, the rule continues to be relevant in cases in which the government is a party or in cases in which it would be appropriate to grant an extension of the notice of appeal deadline or in cases where there is some showing why the petitioner really was unable to file within the time for filing a notice of appeal. So it does preserve some flexibility, but we acknowledge that it serves less of a role today than it did when it was first adopted in 1946. I'd like to turn briefly, if I could, this didn't really come up in the opening part of the argument, but to the state law decisions that petitioner relies on as the only possible way of reconciling his rule or his interpretation with the text of Rule 60B1. So he has a lot of structural arguments, but I don't think those arguments, I'm happy to address them, but I don't think they even get him anywhere unless he has some account of how mistake can possibly exclude mistakes of law and mistakes by judges. Justice Thomas, I think he acknowledged that his interpretation is not a plain meaning interpretation. And so what he said is that when Rule 60B was adopted in 1938, 1937, the drafters of Rule 60B would have understood mistake as a term of art that applied only to mistakes of fact, not mistakes of law. That is just completely wrong. The advisory committee note to the original version of the federal rules explained that Rule 60B was based on California Code of Civil Procedures Section 473, and the California courts had repeatedly recognized that Section 473 applied to both mistakes of law and mistakes of fact. So they did not read it in the term of art way that petitioner proposes. There were two other states that were also mentioned in the advisory committee note, New York and Minnesota. At page six of his reply, my friend acknowledges that those states also treated mistake as applying to both mistakes of law and mistakes of fact. So this idea that it had a narrow idiosyncratic meaning that departed from its ordinary meaning and applied only to mistakes of fact just isn't consistent with any of the three states that the advisory committee specifically pointed to. And my friend has made two other distinctions that I'll just sort of One is he says that those cases applied Section 473 to mistakes of law only in the context of default judgments. That's not true, as he eventually acknowledges in the reply brief. The Mitchell decision from the California Supreme Court in 1909 applied Section 473 to a mistake of law in a case involving post-trial motions. So that limitation doesn't get him anywhere.  cases or don't want to go read them. Professor Moore in 1938 explained how people would have understood that California practice in his treatise. And at page 3,280, he said that the California provision clearly covered mistakes of law and mistakes of fact. The other distinction that my friend has drawn is between mistakes by judges and mistakes by litigants. We think that by deleting the word his, the only textual limitation in Rule 60B1, the advisory committee made clear that the rule would apply to mistakes by anyone. There's no textual basis in the rule after that amendment for understanding it to be limited to only mistakes by other parties or by third parties. And it's hard to see how mistakes by third parties, for example, would require relief from judgment unless they're adopted by the court. Unless the court has further questions, I'm happy to rest on our brief. This is Thomas. This is Breyer. Toledo. This is Barrett. Thank you, counsel. Mr. Adler, rebuttal. Thank you, Mr. Chief Justice. I guess I will start with the state law cases. So my friend talks a lot about the advisory committee notes referenced to the California statute, but we don't start with advisory committee notes. We start with the text of the rule. And the text of the rule uses the exact same language as 17 states. And there's no dispute that at least 12 of the 17 categorically excluded legal errors. They said mistake meant mistake of law. That was the predominant view. That was captured by the leading treatises of the era. My friend talks a lot about so as for the California cases, you know, he refers to only one case that did not involve a default judgment, but that was dicta. That case actually involved a mistake of fact, the Mitchell case, not a mistake of law. And the main point on the California cases is they had the general rule that we are saying. That mistake means mistake of fact, not law. The only exception was limited to default judgments based on a liberal policy in California favoring resolution on the merits. So it's a limited exception in a minority of the states where we have the predominant view in all of the other states categorically saying mistake means mistake of fact. That is the meaning that got picked up in the text of the rule. That's the old soil that got carried forward. As for the Professor Moore treatise in 1938, my friend referred to page 3280 characterizing the California cases. The footnote there, footnote 28, refers only to the dicta in this Mitchell case and all the others are default cases. That's it. So, again, a very limited exception there. If you actually scroll back seven pages earlier in the same treatise to page 3273, Professor Moore says that the Bill of Review for Errors of Law was not covered by the wording of 60B because it was limited to mistakes of fact. So we think that suggests that 60B did not incorporate the default cases from California, and at the very least, it's a wash. At least they negate each other at the very least. Justice Kavanaugh, you're asking about what's wrong with the Second Circuit's approach of sort of imposing this appeal deadline. The problem is it's inconsistent with the text of the rule. Rule 60C does not incorporate Rule 4A's deadlines. It talks about a reasonable time. That's a totality of the circumstances test. You don't just import a categorical rule based on the totality of the circumstances, and that's, I think, what the government is now suggesting. In their brief, they were talking about a presumption and a flexible presumption. I don't know what that means. I don't know where that comes from. But litigants aren't going to know what it means, and litigants need to know what the deadlines are on the front end. Do they have to file within 30 days, 60 days, what? It doesn't make sense to have a one-year outer deadline and then a flexible, presumptive 30-day deadline on the inside. That's just inconsistent with Rule 60C-1. And the final point is because it's a presumption, as the government frames it, it still contemplates people blowing by the appeal deadline. That cannot be right. That does not respect the deadlines of the other rules. And the final point is I think it's important to take a step back and remember what the purpose of B-1 is. B-1 is not a substitute for an appeal. That's how the government is treating here. B-1 is about mistakes of fact made by a party or someone in the litigation process. You make a mistake about what the trial date is. You make a mistake about whether you had been served with process. You make a mistake about whether the lawyer agreed to represent you. And then a judgment gets entered against you. The only recourse you have there is to reopen the judgment based on this mistake of fact. You can't appeal it. It's a fundamentally different situation where the judgment itself contains a legal error. We have appeals for that purpose. And the government is essentially treating 59E appeals as optional. You blow right by the deadlines. I don't think that is correct. So under our position, the only viable option here is that B-1 does not cover legal errors. It doesn't cover judicial errors. Those are covered in other ways. So whichever way you slice it, B-1 doesn't cover this case. This case is governed by B-6. Mr. Kemp must show extraordinary circumstances on remand to reopen an erroneous final judgment. And that's a very high bar for a reason because it protects finality. Mr. Kemp asks only that he be afforded the opportunity to make that showing on remand. The judgment below should be reversed. Thank you, counsel. The case is submitted.